The defendant made a note for $400, payable to one —, who assigned it for value to H. B. Williams. After the assignment, Williams was declared a bankrupt, and his assignee transferred the note to the plaintiff, for value. The defendant, after the assignment to the plaintiff, was also adjudicated a bankrupt, and has been regularly discharged.
The plaintiff, examined as a witness, testified, that after defendant had been declared a bankrupt, he met him in Charlotte, and informed of his having purchased the note, which he exhibited to defendant at the time; and that the defendant, remarking it was a just debt, promised to pay it though he could not pay it on that day; that this conversation occurred before the date of the defendant's discharge.
The defendant, as a witness, swore that no such conversation ever took place as that testified to by the plaintiff, but that he, the defendant, positively refused to pay the note.
The plaintiffs counsel asked the Court to charge the jury, that where two men of equal credibility testified, the one, that a certain conversation took place between them, and the other, testified that no such conversation did take place, that, as a rule of evidence, the affirmative testimony is entitled to more weight than the negative.
His honor declined so to charge; but instructed the jury, with (288) respect to verbal admissions, such as those testified to, they should be received with great caution. The Court read from Greenleaf, the rule applicable to the evidence introduced, as follows: "With respect to all verbal admissions, they ought to be received with great caution. The evidence consisting as it does, in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself, either being himself misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. *Page 240 
It frequently happens also, that the witness by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say. But when the admission is deliberately made and precisely identified, the evidence it affords is often of the most satisfactory nature."
His Honor then charged the jury, that the promise to bind the defendant, must be a distinct and unequivocal promise to pay, notwithstanding his discharge in bankruptcy. His Honor then read the case of Earley v. Kelly, as to the nature of the promise required to bind the defendant; and charged the jury, that if they believed the plaintiff's account of the transaction was correct, they should find a verdict for him, if they believed the defendant's account was correct, they should find a verdict for him. And that on the whole case, unless the plaintiff should satisfy them by a preponderance of evidence, he could not recover.
There was a verdict for the defendant. Judgment and appeal by the plaintiff.
The plaintiff swore that the defendant, after he had been declared a bankrupt, and before his discharge, acknowledged the (289) plaintiff's debt, which was pre-existing, to be due, and promised to pay it. And that this was in a conversation between him and the defendant. The defendant swore that he had made no such promise.
The plaintiff asked his Honor to charge the jury, that, "as a rule of evidence, the positive testimony was entitled to more weight than the negative testimony." His Honor declined the charge, and the defendant had a verdict.
It is laid down as a general rule, that positive testimony is to be believed rather than negative testimony. Henderson v. Crouse, 52 N.C. 623; but it is subject to so many exceptions, as not to be of much practical use; and if carelessly administered, may work much mischief. An illustration of the rule would be this: A swears that he was at church on Sunday and that B was there. C swears that he was there also, and that B was not there. A is to be believed rather than C, because A might have seen B there, and C might not have seen him, although he was there. In this way the testimony is reconciled, without attributing corruption to either of the witnesses. But suppose A swears that B was at church, and B is introduced as a witness, and swears that *Page 241 
he was not there. Is A to be believed rather than B upon the idea that his testimony is positive, and that the testimony of B is negative? Of course not. It would seem to be the other way. It is scarcely possible that B can be mistaken. Failure of memory alone could account for his mistake. But A's mistake might be accounted for in many ways, — his memory might be at fault, he might have confounded one time with another; mistaken some other person for B, c. So here, the plaintiff swears he had a certain conversation with the defendant, in which defendant promised to pay him a debt; the defendant swears there was no such conversation, and that he made no such promise. As to whether there was a conversation, they would seem to stand on equal footing. For aught that we can see, the imagination of the plaintiff was as apt to create the fact, as the memory of the defendant was to lose it. And, admitting that there was a (290) conversation, then, as to whether the defendant made the promise, would seem to depend more upon the defendant's testimony than the plaintiff's. The plaintiff may have misunderstood what the defendant said; or, if he understood his words, he might have misunderstood his meaning. The defendant was as apt to remember what he said, and certainly much more apt to know what he meant. And when to this is added the fact, that the defendant was at that very time trying to get clear of the debt, it would seem that his Honor was very well justified in refusing to apply the general rule to this particular case.
His Honor charged the jury, that "with regard to verbal admissions, such as those testified to by the plaintiff, they ought to be received with great caution." And then he read from Greenleaf on Evidence, where that is laid down and the reason given for it.
The objection to this charge, as we understood the plaintiff's counsel, was not so much that it was wrong as a principle of evidence, as that, in this case, it was one-sided; that he ought also to have cautioned the jury against the defendant's statement. The answer is, that the defendant had not made any statement detailing the admissions or declarations of the plaintiff; or of the conversation between him and the plaintiff. He had simply denied that there was any such statement. So that the rule would have been inapplicable, if applied to the testimony of the defendant. His Honor said nothing to reflect upon the character of the plaintiff. His remarks were as to the character of such evidence, by whomsoever given in. We think the case called for the caution which his Honor gave the jury. But if we were doubtful of that, still we would not have the verdict disturbed, because it is manifestly right.
The plaintiff's prayer for instructions admits, that the plaintiff and *Page 242 
defendants, are "of equal credibility." They were the only witnesses examined. The scales were, therefore, even. The plaintiff could not recover without a preponderance. The defendant was entitled (291) to a verdict.
There is no error. Judgment here for the defendant for cost.
PER CURIAM. Judgment affirmed.
S. v. Murray 139 N.C. 542; Rosser v. Bynum, 168 N.C. 343; Carruthersv. R R, 218 N.C. 54.